**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

Washington International
Insurance Company and North
American Specialty Insurance
Company

   v.                                                        Civil No. 10-cv-526-LM
                                                            Opinion No. 2102 DNH 156

Ashton Agency, Inc.

**O R D E R**

This case now consists of claims asserted by Washington International Insurance Company and North American Specialty Insurance Company (collectively "Washington") against Ashton Agency, Inc. ("Ashton") for: (1) breach of contract; (2) breach of fiduciary duty; and (3) specific performance. All three claims arise from Ashton's alleged failure to remit premiums it collected for commercial surety bonds it sold as Washington's agent. Before the court is Washington's motion for summary judgment. Ashton objects. For the reasons that follow, Washington's motion for summary judgment is granted in part.

**Summary Judgment Standard**

"To prevail on summary judgment, the moving party must show that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  Markel

Am. Ins. Co. v. Díaz-Santiago, 674 F.3d 21, 29 (1st Cir. 2012) (quoting Fed. R. Civ. P. 56(a)).  Here, the parties have "stipulate[d] that the remaining issues in this case can be resolved on a motion for summary judgment."  Stip. (doc. no. 56), at 1.

**Background**

Washington issues surety bonds.  In 2004, Ashton entered into an agreement with Washington (hereinafter "Agreement"), under which Ashton sold Washington's bonds, collected premiums, took a commission, and remitted the remainder, i.e., the net premium, to Washington.  Under the Agreement, Ashton "agree[d] to pay [Washington] [the] net premium due on all business placed by or through the Agent [i.e., Ashton] with [Washington] not later than forty-five (45) days after the end of the month in which the business written [became] effective . . . ."  Loeffler Aff., Ex. 1, Part B (doc. no. 65-2), at 7.

Pursuant to the Agreement, Ashton sold 834 Florida motor-vehicle-dealer surety bonds for which Washington was the surety.  On each bond, the principal was a Florida motor vehicle dealer, and the obligee was the Director of the Florida Division of Motor Vehicles.  The bonds ran to the benefit of persons who purchased motor vehicles from dealers who violated certain Florida statutes.  Each bond had a term of May 1, 2010, through

April 30, 2011.  It appears to be undisputed that the bonds operate on an "occurrence" basis rather than a "claims-made" basis.  That means that the surety is on the risk for up to five years after the end of the term of a bond, depending upon the limitation period for the statutory violation underlying a claim on the bond.  Ashton collected premiums for all 834 of the Washington bonds it sold, but, to date, has not remitted the net premiums on any of those bonds to Washington.

In mid August of 2010, for reasons that are not material, Ashton told Washington that it intended to "move" the 834 Washington bonds it had sold to the Great American Insurance Company ("Great American").  Washington objected, but, on October 1, 2010, Ashton issued between 551 and 578 Great American bonds to the same auto dealers to which it had previously issued Washington bonds.[1]  It appears to be undisputed that Ashton remitted to Great American the premiums it initially collected for the Washington bonds it replaced, to pay for the replacement bonds.  The Great American "replacement bonds" had the same term as the Washington bonds they replaced, and, according to Ashton, once Great American issued its bonds, the Washington bonds they replaced "ceased to exist."  Ashton Decl. (doc. no. 68-5) ¶ 10.  Based on the number of Great American

---

[1] Even though the parties stipulated that their dispute could be resolved on summary judgment, they disagree about the number of replacement bonds Ashton issued.

bonds Ashton issued, between 256 and 283 of the Washington bonds Ashton issued remained in force for their full terms.  The parties agree that the net premiums associated with those bonds amount to $482,199.33.  On September 24, 2010, Washington initiated the process for terminating the Agreement, and the termination became effective on December 25, 2010.

Based on the foregoing, Washington sued Ashton in nine counts, three of which remain unresolved.  In Count I, Washington asserts a claim for breach of contract, and seeks to recover the premiums Ashton collected for all 834 of the Washington bonds it sold, both the ones that were replaced and the ones that were not.  Count IV is a claim for breach of fiduciary duty.  It alleges more or less the same conduct that underpins Count I and seeks essentially the same damages.  Count VII is a claim for specific performance, based on Ashton's alleged failure to: (1) hold the premiums it collected in trust; and (2) remit those premiums to Washington in a timely manner.

## Discussion

Washington argues that Ashton breached the Agreement and its fiduciary duties by: (1) failing to remit the net premiums it collected for the Washington bonds that were never replaced; (2) failing to remit the net premiums it collected for the Washington bonds that were replaced; and (3) replacing 551

4

Washington bonds with Great American bonds. Ashton agrees that it owes Washington $482,199.33, i.e., the amount of the net premiums it collected for Washington bonds that were not replaced with Great American bonds. Necessarily, then, Ashton admits liability on Washington's claims as to the bonds that were not replaced. But, Ashton argues that it owes Washington nothing with respect to the bonds that were replaced, because: (1) it did not breach the Agreement by replacing Washington bonds with Great American bonds; (2) it did not act in its own self-interest by replacing Washington bonds with Great American bonds; and (3) even if it did breach the Agreement by replacing the Washington bonds, Washington cannot meet its burden of proving damages.

First things first. Ashton devotes considerable attention to what may be a meritorious argument that no provision of the Agreement prohibited the replacement of Washington bonds with Great American bonds. But, Ashton seems to ignore Washington's claim that it also breached the Agreement by failing to remit net premiums for the bonds it later replaced. However, if Ashton breached the Agreement by failing to remit net premiums on the bonds it did not replace, which it concedes, it also breached the Agreement by failing to remit net premiums on the rest of the Washington bonds it sold. As of July 15, 2010, forty-five days after the last day of the month in which all 834

of the Washington bonds that Ashton sold became effective, Ashton owed Washington the net premiums for all 834 bonds.  When July 15 came and went without Ashton remitting those premiums, Ashton was in breach of the Agreement.  Whether Ashton further breached the Agreement ten weeks later by replacing the Washington bonds with Great American bonds is an interesting legal question, but one the court need not resolve, as Washington does not indicate how the damages available for that purported breach would be any greater than the damages available for the breach that occurred on July 15.  To sum up, Washington is entitled to judgment as a matter of law that Ashton breached the Agreement and its fiduciary duties by failing to remit the net premiums it collected on the Washington bonds it later replaced with Great American bonds.

   Because Washington is entitled to judgment as a matter of law on liability, all that remains is the matter of damages for Ashton's breach of its contractual obligation to remit the net premiums it collected on the bonds it later replaced.  Washington argues that it is entitled to the $1,024,373.84 it was owed on July 15, 2010, for the subsequently replaced bonds.  In Washington's view, recovery of the full amount it was owed on July 15, 2010, would place it in the same position it would have been in if Ashton had fully performed its obligations under the Agreement.  In Ashton's view, awarding Washington the full net

6

premium would result in an enormous windfall because Washington is no longer on the risk, due to the issuance of the Great American replacement bonds.  Ashton also argues that Washington is not entitled to any amount of pro rata damages, because it: (1) has not expressly asked for such relief; (2) is not on the risk; and (3) has suffered no actual damages.

Based on the parties' briefing, several things are clear.  First, if the court were to award Washington the full amount of the net premiums Ashton collected for the bonds it later replaced, Washington would receive an unwarranted windfall.  To be sure, "the goal of damages in actions for breach of contract is to put the non-breaching party in the same position it would have been in if the contract had been fully performed." George v. Al Hoyt & Sons, Inc., 162 N.H. 123, 134 (2011) (quoting Robert E. Tardiff, Inc. v. Twin Oaks Realty Trust, 130 N.H. 673, 677 (1988); citing Hawkins v. McGee, 84 N.H. 114, 117 (1929)).  Had the contract been fully performed, Washington would have collected $1,024,373.84 in premiums from Ashton, and would be on the risk until April 30, 2016.  But, Washington is not on the risk; Great American is.  Awarding Washington over $1 million in premiums without exposure to any risk is a much better position than the one Washington bargained for.

However, awarding Washington nothing would leave it in a worse position than the one it bargained for.  The position that

7

Washington bargained for was to retain as profit the difference between net premiums it took in and the claims it paid out.  The profit that Washington would have realized from the bonds that Ashton replaced cannot be known with exact certainty until April 30, 2016, the date on which Great American is no longer on the risk that Washington initially insured.  That said, the court is confident that Washington's lost profits could be determined to a reasonable degree of certainty, based on past history, current trends, and all the other relevant statistical information that is commonly relied upon in the actuarial realm of the insurance world.  But the record in this case, as currently developed, does not permit the court to make a properly supported award of lost profits.

Ashton's argument that Washington is entitled to no damages for breach of contract is misguided for at least two reasons.  First, Ashton *did* breach the Agreement by failing to remit premiums for 834 bonds to Washington.  While Ashton now argues that it remedied its breach by putting Great American on the risk in place of Washington, the court is aware of no rule of law that permits a breaching party to choose the manner in which its breach is remedied, especially where, as here, the course of action selected by the breaching party deprives the party that was wronged of the very benefit it bargained for, *i.e.*, the

profit resulting from paying less in claims than it received in premiums.

Second, Ashton's position ignores the fact that regardless of the retroactive effect of the bonds Great American issued on October 1, when those bonds were issued, Washington had been on the risk for five full months, despite having received no premiums from Ashton. That may be a compensable injury, as there is a reasonable argument to be made that Washington's operations, and in particular its decisions about cash management, were affected by the risk to which it was exposed. Under the terms of the Agreement, Washington was prepared to be on the risk without the benefit of premiums until July 15, but it did not agree to be on the risk for another ten weeks without the benefit of premiums from which to pay claims. But, thanks to Ashton's breach, that is precisely the position in which Washington found itself.

So, here is where things stand. Washington is entitled to judgment as a matter of law on liability; Ashton breached both the Agreement and its fiduciary duties by failing to pay the net premiums on 834 bonds on July 15. For that breach, Washington is entitled to: (1) $482,199.33, *i.e.*, the net premiums for the bonds that were not replaced; and (2) the profits it would have earned from the replaced bonds, an award that both puts Washington in the position it bargained for and compensates it

for the ten weeks it spent on the risk without any premiums from which to pay claims.

Because the parties have framed their arguments concerning damages on an all-or-nothing basis, the court has no good way to calculate Washington's lost profits. Accordingly, the hearing currently scheduled for September 19, 2012, shall serve as a case-management conference focusing on the procedural framework for determining the correct measure of damages. As a guide to the parties, the court notes Robert Ashton's testimony about Washington's "'continuing concern' with the Florida DMV bond program loss ratio," Ashton Decl. (doc. no. 47-5) ¶ 5. If that testimony is accurate, it is possible that Washington's lost profits may not be large enough to justify the expense of documenting and litigating them. But, that is for the parties to determine, in their own best interests. Finally, as Ashton insists that Washington is no longer on the risk, and faces no exposure to claims on the bonds it issued, Washington is entitled to be held harmless by Ashton in the event that any person attempts to make a claim against Washington on any of the replaced bonds.

## Conclusion

For the reasons and to the extent stated above, Washington's motion for summary judgment, document no. 64, is

granted in part. The court will meet with the parties on September 19 to make a plan for determining the correct measure of damages.

    SO ORDERED.

                                                   Landya McCafferty
                                                   United States Magistrate Judge

September 10, 2012

cc:   Bradford R. Carver, Esq.
     Geoffrey M. Coan, Esq.
     Eric H. Loeffler, Esq.
     Jeffrey C. Spear, Esq.