```
              UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF NEW HAMPSHIRE
```

Washington International
Insurance Company and North
American Specialty Insurance
Company

    v.                                  Civil No. 10-cv-526-LM
                                            Opinion No. 2013 DNH 072
Ashton Agency, Inc.


**O R D E R**

In an order dated March 7, 2013, the court granted judgment to plaintiffs (collectively "Washington") in the amount of $592,084.33. Before the court is Washington's motion for attorney's fees, submitted pursuant to Rule 54(d)(2) of the Federal Rules of Civil Procedure ("Federal Rules"). Ashton Agency, Inc. ("Ashton") objects. For the reasons that follow, Washington's motion for attorney's fees is granted in part.

**The Legal Standard**

The Federal Rules require a party seeking attorney's fees to do so by motion. See Fed. R. Civ. P. 54(d)(2)(A). Among other things, a motion for attorney's fees must "specify . . . the statute, rule, or other grounds entitling the movant to the award." Fed. R. Civ. P. 54(d)(2)(B)(ii). Here, Washington grounds its request for attorney's fees on the court's inherent power to make such an award when circumstances so warrant.

"It is beyond serious dispute that a federal court possesses inherent power to shift attorneys' fees when parties conduct litigation in bad faith." Jones v. Winnepesaukee Realty, 990 F.2d 1, 4 (1st Cir. 1993) (citing Roadway Express, Inc. v. Piper, 447 U.S. 752, 765-66 (1980); Stefan v. Laurenitis, 889 F.2d 363, 370 (1st Cir. 1989); Peltier v. Peltier, 548 F.2d 1083, 1084 (1st Cir. 1977)). More specifically:

> Although under the American Rule "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser," Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975), federal courts have the power to award such fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," id. at 258-59 (internal quotation marks omitted).

RTR Techs., Inc. v. Helming, 707 F.3d 84, 94 (1st Cir. 2013) (parallel citations omitted). The party seeking attorney's fees bears the burden of establishing its opponent's bad-faith conduct by clear and convincing evidence. See Dubois v. U.S. Dep't of Agric., No. CIV.A. 95-50-B, 1998 WL 34007445, at *2 (D.N.H. July 17, 1998) (citing Dow Chem. Pac. Ltd. v. Rascator Maritime S.A., 782 F.2d 329, 344 (2d Cir. 1986); Autorama Corp. v. Stewart, 802 F.2d 1284, 1288 (10th Cir. 1986)).

As for the kind of conduct that may justify an award of attorney's fees, the court of appeals has explained that "[t]o invoke [an] exception [to the American Rule] under a claim of

'vexatious' conduct, the moving party must demonstrate that the losing party's actions were 'frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.'" Dubois v. U.S. Dep't of Agric., 270 F.3d 77, 80 (1st Cir. 2001) (quoting Local 285, Serv. Emps. Int'l Union v. Nonotuck Res. Assocs., 64 F.3d 735, 737 (1st Cir. 1995)). Finally, in Whitney Brothers Co. v. Sprafkin, 60 F.3d 8, 15 (1st Cir. 1995), the court of appeals appears to have tacitly endorsed the principle that an award of attorney's fees may be appropriate when a defendant improperly compels a plaintiff to file suit to enforce a right to which it was clearly entitled.[1]

While district courts have inherent power to award attorney's fees, the court of appeals has cautioned that "[d]istrict courts are well-advised to use their inherent power cautiously and to grant attorneys' fees sparingly under that power." RTR Techs., 707 F.3d at 94 (citing Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991); Estate of Hevia v. Portrio Corp., 602 F.3d 34, 46 (1st Cir. 2010)). That is,

---

[1] That principle is well established in New Hampshire law. See In re Mason, 164 N.H. 391, 399 (2012) (citing Clipper Affiliates v. Checovich, 138 N.H. 271, 278 (1994)). Judge DiClerico applied that principle in the decision under review in Whitney Brothers, see 60 F.3d at 15, and while the court of appeals vacated that decision, it found no fault with Judge DiClerico's reliance upon the rule that fees may be awarded when a defendant has compelled a plaintiff to file suit to enforce a right to which it was clearly entitled.

> "[b]ecause of their very potency, inherent powers must
> be exercised with restraint and discretion," Chambers,
> 501 U.S. at 44 (citation omitted), and thus "'should
> be used sparingly and reserved for egregious
> circumstances,'" Whitney Bros. Co., 60 F.3d at 13
> (quoting Jones . . ., 990 F.2d [at] 4).

Mullane v. Chambers, 333 F.3d 322, 338 (1st Cir. 2003). Moreover, because "the power to sanction must be used with great circumspection and restraint, [and is to be] employed only in compelling situations," Dubois, 270 F.3d at 80, the court of appeals "require[s] that a district court describe the bad faith conduct with sufficient specificity, accompanied by a detailed explanation of the reasons justifying the award," Mullane, 333 F.3d at 338 (quoting Whitney Bros., 60 F.3d at 13; citing Gradmann & Holler GmbH v. Cont'l Lines, S.A., 679 F.2d 272, 274 (1st Cir. 1982)).

**Background**

With the foregoing legal principles in mind, the court turns to the relevant facts of this case, which are drawn largely, but not exclusively, from its two summary-judgment orders.

Ashton, as an agent for Washington, sold 834 motor-vehicle-dealer surety bonds for which Washington was the surety. Ashton was contractually obligated to remit premiums for those bonds to Washington by July 15, 2010. It did not do so. On October 1, 2010, Ashton replaced between 551 and 578 of the Washington

4

bonds with bonds issued by Great American Insurance Company ("Great American").  Thus, Washington remained the surety on no fewer than 256 of the bonds Ashton sold.  The amount due to Washington as net premiums for those bonds was $482,199.33.

In this action, which was filed on November 12, 2010, Washington sought "an Order requiring Ashton to remit to [it] an amount of not less than $1,524,189.00, representing the premiums for the Bonds that Ashton failed to remit to [it] plus interest, costs, attorneys fees and any other incurred expenses."  Compl. (doc. no. 1) 9.  To be clear, Washington sought to recover the full net premiums for both the bonds Ashton replaced with Great American bonds and the bonds Ashton did not replace.

In a declaration dated April 1, 2011, that was filed in support of its objection to Washington's first motion for a preliminary injunction, Ashton's president, Robert Ashton, stated that "in August 2010, Great American issued replacement bonds for all but a handful of the [Washington] Bonds."  Def.'s Obj., Attach. 1 (doc. no. 29-1) ¶ 6.  He also stated that Ashton had remitted the premiums for six bonds on which claims had been made.  See id. ¶¶ 9-10.  Based upon the statements in Mr. Ashton's declaration, Ashton said, in its objection to Washington's request for an injunction, that "in August 2010, Great American issued replacement bonds for all but six of the [Washington] Bonds."  Def.'s Obj. (doc. no. 29) ¶ 3.  In

5

response to Mr. Ashton's statement about the "handful" of bonds Ashton had replaced, Washington undertook an investigation at the Florida DMV and learned that the number of unreplaced bonds was well over 200.

Washington reported the results of its investigation in a renewed motion for preliminary injunctive relief.  In a declaration dated January 5, 2012, that was filed in support of Ashton's objection to Washington's renewed motion, Mr. Ashton acknowledged that his "statement that all but a handful of the [Washington] bonds were replaced by bonds from Great American was incorrect."  Def.'s Obj., Attach. 1 (doc. no. 49-1) ¶ 4.  He then stated that, according to Ashton's records, 256 bonds had not been replaced.  See id. ¶ 8.  He further stated:

> In the event this Court concludes that [Washington] is likely to prevail in showing that premiums for unreplaced bonds . . . have not been paid, Ashton will make arrangements either to pay the premiums due on these bonds to the Court, or to "freeze" sufficient assets to pay those premiums pending a final hearing in this case, whichever option the Court selects.

Id. ¶ 9.  At no point did Mr. Ashton, or Ashton, ever identify any reason why the court would not conclude that Ashton had failed to remit the premiums for the unreplaced bonds.

In an order from the bench during the hearing on Washington's renewed motion for preliminary injunctive relief, the court concluded that "[w]ith respect to the unreplaced bonds

6

. . . the likelihood of success is very strong." Tr. (doc. no. 58) 33. But, because the relief Washington asked for was barred by Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308 (1999), the court denied Washington's request for an injunction, see Tr. 33-35. While Ashton offered no excuse for its failure to remit premiums for the unreplaced bonds, and the court determined that Washington's likelihood of success on the merits of its claim for those premiums was strong, Ashton continued to withhold them.

Washington next moved for summary judgment, and sought the full amount of the premiums due on July 15, 2010, for both the replaced bonds and the unreplaced bonds. While Washington sought to recover premiums for both categories of bonds, it devoted a separate section of the memorandum of law in support of its motion to an argument that Ashton was liable for breach of contract as a result of failing to remit premiums for the unreplaced bonds. See Pls.' Mem. of Law (doc. no. 64-1) 11. In its objection to Washington's summary-judgment motion, Ashton stated:

> [Washington]'s 256 Non-Replaced Bonds have been in place since May 2010, and [Washington] has been on the risk for those bonds since that time. Because of this fact, the premiums are owing, and Ashton does not dispute its obligations to remit them.

Def.'s Obj. to Summ. J. (doc. no. 68) 5. Even after acknowledging its obligation to remit premiums for the

7

unreplaced bonds, Ashton persisted in not doing so.  In an order on Washington's motion for summary judgment, dated September 10, 2012, the court ruled in favor of Washington on the issue of liability as to all 834 bonds, and further ruled that Washington was entitled to "$482,199.33, i.e., the net premiums for the bonds that were not replaced."  Order (doc. no. 75) 9.  By the time the court issued its second summary-judgment order on March 7, 2013, premiums for the unreplaced bonds remained unpaid, and the court repeated what it had said in its first summary-judgment order, i.e., that Washington was entitled to "a recovery of $482,199.33 for Ashton's failure to remit premiums for the bonds it never replaced."  Order (doc. no. 95) 14.

In its motion for attorney's fees, dated April 8, 2013, Washington noted: "On April 2, 2013, Ashton offered to pay the amount owing on the non-replaced bonds under certain conditions.  To date, however, that payment has not been made."  Doc. no. 99, at 6 n.4.  In its objection to Washington's motion for attorney's fees, Ashton asserts, without the benefit of an affidavit or any other evidentiary support, that "it wired $482,199.33 to [Washington] on April 9, 2013."  Def.'s Obj. (doc. no. 103) 5.  Thus, Ashton remitted those premiums more than nine months after it recognized its obligation to do so.

**Discussion**

In the motion before the court, Washington asks for the attorney's fees it has incurred to obtain a judgment that Ashton owed premiums for the unreplaced bonds.  It argues that such an award is justified because, as a result of Ashton's patently unreasonable conduct, it was forced to come to court to collect premiums it should have received without judicial assistance and was forced to seek summary judgment on an issue for which Ashton admittedly had no defense.

In its objection, Ashton characterizes Washington's argument for attorney's fees as "hing[ing] on a single mistake made by Mr. Ashton in calculating the number of bonds that had been replaced," Def.'s Obj. (doc. no. 103) 7.  Then it argues that even if Washington could establish that Mr. Ashton's conduct was sufficiently egregious to warrant an award of attorney's fees, it is not entitled to such an award because: (1) there are no legal arguments or efforts attributable solely to the non-replaced bonds; and (2) there are no arguments or claims for relief attributable or traceable directly to Washington's assertion that Mr. Ashton engaged in vexatious conduct.  That is so, Ashton argues, because Washington's "legal arguments, theories, and claims for relief have never changed, even after the discovery that a portion of the bonds had not been replaced [and Washington] has unerringly and unwaveringly

sought payment of the full premiums owing on all of the bonds as its sole remedy." Def.'s Obj. (doc. no. 103) 7-8. While it is a close question, the court concludes that Washington is entitled to an award of the attorney's fees it incurred to obtain a judgment that it was entitled to premiums for the unreplaced bonds.

Ashton sold 256 Washington bonds that it never replaced. Premiums for those bonds, along with premiums for the replaced bonds, were due on July 15, 2010. Ashton did not remit any of those premiums. That forced Washington to come to court to collect them. At no point in this litigation has Ashton ever articulated a defense to its liability for premiums on the unreplaced bonds,[2] nor has it identified any dispute regarding the amount of premiums it owed on those bonds. It was, therefore, unreasonable for Ashton to make Washington resort to litigation to collect premiums for the unreplaced bonds.

The best that can be said about Ashton's position is that up until January of 2012, Mr. Ashton was unaware of the number of bonds that Ashton had replaced. But, because it was Ashton that replaced the Washington bonds, it is appropriate to charge Ashton with knowledge of the number of bonds it had replaced,

---

[2] Ashton's dispute with Washington over the amount of damages Washington suffered as a result of its failure to remit premiums for the replaced bonds, an issue worthy of litigation, provides no justification for Ashton's failure to remit premiums for the unreplaced bonds.

10

regardless of what Mr. Ashton may have known.  In any event, by the time Mr. Ashton gave his second declaration, even he knew how many bonds Ashton had replaced, and, again, Ashton has never mounted a defense to its obligation to remit premiums for the unreplaced bonds.  After admitting that there were 256 of those bonds, rather than the half dozen it had previously acknowledged, Ashton still did not remit premiums for the rest of the unreplaced bonds.  Forcing Washington to move for summary judgment on a claim to which Ashton had no defense was, if anything, more unreasonable than forcing Washington to come to court in the first place.  Yet that is what Ashton did.

    Ashton's substantive argument against an award of attorney's fees goes like this: (1) Washington bases its request on a single instance of vexatious conduct, Mr. Ashton's erroneous statement about the number of unreplaced bonds; (2) attorney's fees may be awarded only when they have resulted from an opponent's vexatious conduct; and (3) because Washington has identified no legal work that was undertaken as a result of Mr. Ashton's erroneous statement, it is not entitled to an award of attorney's fees.  That argument is based upon a correct statement of the law but an inaccurate factual premise. Washington bases its request for attorney's fees on more than Mr. Ashton's erroneous statement; it also identifies, as vexatious, the conduct by Ashton that compelled it to come to

court and to move for summary judgment to collect premiums for the unreplaced bonds.  See Pls.' Mot. for Fees (doc. no 99) 5.  Failing to remit premiums, standing alone, was a breach of contract.  Withholding those premiums without any colorable legal justification for doing so, and thus forcing Washington to litigate its entitlement to a right that Ashton never actually contested, was vexatious.  There can be no question that Washington has incurred some attorney's fees as a result of that vexatious conduct.

That said, Ashton has a legitimate interest in not paying attorney's fees that did not result from its vexatious conduct.  Thus, the court readily accepts the reasoning of the opinions Ashton cites for the proposition that a court awarding attorney's fees must be careful to distinguish between fees that resulted from an opponent's vexatious conduct and fees that did not.  The court has every intention of abiding by that principle if and when it has the occasion to consider a formal application for fees.  However, the mere fact that Washington sought to recover premiums for both the replaced bonds and the unreplaced bonds under the same legal theory does not entitle Ashton to avoid paying the attorney's fees Washington incurred to recover premiums for the unreplaced bonds.  If anything, the interrelationship between Washington's fully successful claim for premiums on the unreplaced bonds and its partially

successful claim for premiums on the replaced bonds works to Washington's benefit rather than to its detriment.  Cf. Trainor v. HEI Hospitality, LLC, 699 F.3d 19, 35 (1st Cir. 2012) ("attorneys' fees may be awarded with respect to work performed on unsuccessful claims if those claims are interrelated with successful claims") (citing Lipsett v. Blanco, 975 F.2d 934, 940 (1st Cir. 1992); Aubin v. Fudala, 782 F.2d 287, 291 (1st Cir. 1986)).

To summarize, there was never any basis in law or fact for Ashton's failure to remit premiums for the unreplaced bonds. Thus, its non-payment was unreasonable and without foundation. That warrants an award of the attorney's fees Washington incurred in obtaining judgment on the unreplaced bonds.  See Dubois, 270 F.3d at 80.  The court well understands that attorney's fees for vexatious conduct should be awarded only in compelling situations, see Dubois, 270 F.3d at 80, involving egregious circumstances, see Mullane, 333 F.3d at 338.  In this case, Ashton did not just breach its agreement to remit premiums for the unreplaced bonds.  Beyond that, it forced Washington to come to court to recover those premiums without having any defense for its non-payment and then compounded that error by: (1) failing to accurately report the number of unreplaced bonds; and (2) forcing Washington to move for summary judgment after acknowledging the extent of its non-payment and without having

13

any defense for failing to remit the premiums for the unreplaced bonds. Taken together, Ashton's conduct with regard to those bonds was egregious.

As the court has ruled, Washington is entitled to the attorney's fees it incurred to obtain judgment on its claim for premiums on the unreplaced bonds. That judgment is composed of two parts, the court's ruling on liability, and the court's determination of the amount Ashton owed Washington. As to the first part, Washington is entitled to the fees it incurred in moving for summary judgment on its breach-of-contract claim, to the extent that claim was based upon Ashton's failure to remit premiums for the unreplaced bonds. As to the second part of Washington's judgment, Mr. Ashton initially represented, under oath, that Ashton had replaced all but a handful of the Washington bonds it had sold. Left to its own devices, Washington performed the research necessary to demonstrate that Ashton had left at least 256 bonds unreplaced, not just six. If Washington incurred any attorney's fees related to its research into the actual number of unreplaced bonds, which was essential to the court's determination of the amount of the judgment against Ashton, Washington is also entitled to those fees.

The court concludes with a few words of caution concerning the possibility that the amount to which Washington is entitled for attorney's fees could be less than the amount it will cost

14

to litigate this issue to a conclusion.  Based upon what can be gleaned from the pleadings in this case, it does not appear that judgment on premiums for the unreplaced bonds could have been all that costly to Washington.  One page of its summary-judgment motion was devoted to that issue, and Ashton conceded it in two sentences of its objection.  That is not much of a legal fight, and it cannot have required a great deal of legal work to win it.[3]  On the other hand, before it can receive an award of attorney's fees, Washington must bear the burden of: (1) documenting the hours spent by its attorneys to obtain its judgment; and (2) proving a reasonable hourly rate for that legal work.  See Burke v. McDonald, 572 F.3d 51, 56, 63 (1st Cir. 2009).  That will require briefing, affidavits, and perhaps a hearing.  Accordingly, as it contemplates how to proceed from this order, Washington should carefully consider the cost of litigating this issue any further.

---

[3] The court has no doubt that Washington has incurred significant attorney's fees in pursuing its claims against Ashton, but the lion's share of these fees appear to have been generated by litigating the motions for injunctive relief, obtaining judgment as to the replaced bonds, and establishing the proper measure of damages for Ashton's failure to remit premiums for those bonds.  But, as Washington understands, it is not entitled to the fees it incurred litigating those matters.

**Conclusion**

For the reasons detailed above, Washington's motion for attorney's fees, document no. 99, is granted to the extent that Washington is entitled to the reasonable attorney's fees it has incurred to obtain judgment against Ashton with respect to the unreplaced bonds. Determining the exact amount to which Washington is entitled is a question for another day, to be resolved upon the submission of documentation sufficient to allow the court to perform a proper lodestar analysis.

SO ORDERED.

_____
Landya McCafferty
United States Magistrate Judge

May 8, 2013

cc: Bradford R. Carver, Esq.
    Geoffrey M. Coan, Esq.
    Eric H. Loeffler, Esq.
    Jeffrey C. Spear, Esq.